# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **CARLOS A. PEREZ,** | ] |
| Plaintiff, | ] |
| vs. | ] CV 08-J-2145-NW |
| **MICHAEL ASTRUE,** **Commissioner of Social Security** | ] |
| Defendant. | ] |

## MEMORANDUM OPINION

The claimant appeals from the decision of the Commissioner of Social Security denying him a period of disability insurance benefits and supplemental security income. The case is now properly before the court. *See* 42 U.S.C. § 405(g). At the time of the hearing before the Administrative Law Judge ("ALJ"), the plaintiff was 26 years old, and had a tenth grade education (R. 33, 36). He alleges an inability to work based solely on "severe social anxiet[ies]" and "mental problems" (R. 121). The plaintiff alleges no physical limitations.

The ALJ found that the plaintiff suffered from the severe impairments of bipolar disorder – depressive type, anxiety disorder, and history of substance abuse (R. 15) but none of these impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 18). The ALJ specifically found that the plaintiff's impairments did not meet Listings 12.04, 12.06 or 12.09 (R. 18). Further, the ALJ found that the plaintiff

retained the residual functional capacity to perform medium work and could return to his past relevant work as an automobile oiler (R. 18, 22). The ALJ set forth numerous reasons as to why he found the plaintiff's testimony concerning alleged limitations to be not credible (R. 21-22). The ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act for purposes of receiving Supplemental Security Income (R. 22-23).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this limited scope does not render affirmance automatic,

> for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached." Bridges v. Bowen, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).

The court is satisfied that the decision of the ALJ is supported by substantial evidence.  The plaintiff testified that he was fired from Ray Miller Buick because he missed too many days due to his mother being hospitalized (R. 38).  He testified he could not do that work any more because was afraid to leave the house, but had no problems riding his motorcycle (R. 41).  He reported to Riverbend Mental Health Center that he had gained twenty pounds but could not eat or sleep because he was afraid of the dark (R. 215, 220), and further testified at his hearing that he went out at night to ride his motorcycle and go to a park with his girlfriend (R. 45-46).

The plaintiff testified he had problems with depression and anxiety since he was 15 or 16 (R. 42) but he has been able to work in the past.  He testified he has panic attacks if he is around a group of people, but also testified that he has been attending AA meetings for a number of years (R. 44).  The plaintiff further testified that the medication he was taking at the time of the hearing kept him from getting upset easily (R. 45).  He takes his fiancé for rides on his motorcycle (R. 46).  She has provided a home for him for the past five years (R. 34, 47-48).

The plaintiff testified during the hearing that he had no children (R.  34), but an August 3, 2006, medical record reflects that the plaintiff had a court date on August 22 for noise violation and also had a child support hearing coming up, with the notation "② children" (R. 170).  A record from Riverbend Mental Health Center reflects that the plaintiff has one seven year old child (R. 214).

An October 2006 record from Riverbend notes that the plaintiff was provided with the name and number for Vocational Rehabilitation (R. 223). As of his hearing in April 2008 the plaintiff had not pursued this option (R. 47).

The plaintiff's Riverbend records show as follows: He was first seen on August 17, 2006, by a social worker, Rose Willis. Ms. Willis opined that the plaintiff suffered from cocaine dependence in partial remission, rule out bipolar disorder, major depressive disorder and panic disorder (R. 212). He was at Riverbend in response to his hospitalization two weeks prior for consuming multiple gallons of alcohol in an attempt to kill himself (R. 213). While there are references to that hospitalization (R. 221), no records from the same are contained in the medical evidence before the court. The plaintiff indicated to Ms. Willis that he was unemployed, but looking for a job at that time (R. 222).

The plaintiff related that if he got around more than 5 people, he panics (R. 214). He further reported rapid cycling of moods from angry to violent and a history of self mutilation (R. 215). He also reported that he was pursuing his GED (R. 215), although the plaintiff had abandoned these attempts by the time of his hearing (R. 36-37).

Dr. Stanford met with the plaintiff in September 2006 and noted the plaintiff reported a three month history of worsened anxiety, "suicidal tendencies," difficulty sleeping, periods of depression and periods of irritable moods (R. 225). At that time, he was diagnosed with bipolar disorder, depressed, polysubstance dependence,

4

possible intermittent explosive disorder, and personality disorder (R. 226). Dr. Stanford estimated the plaintiff's Global Assessment of Functioning (GAF) at 50 (R. 227). An October 2006 record, signed by Donna Grace, CRNP, reflects that the plaintiff reported he felt much better since beginning Lamictal and Effexor (R. 223). His mother had committed suicide two weeks prior, and the plaintiff believed under those circumstances the two panic attacks he had were not unusual (R. 223). The plaintiff asserted he was working odd jobs but had trouble with regular jobs due to temper outbursts (R. 223). The plaintiff's mood was euthymic, although his affect was mildly anxious (R. 224). He reported improvement with depression and anxiety since beginning medication (R. 224).

In a meeting with Tina Smith, LPN, in January 2007, the plaintiff reported that he was not sleeping well, but he was having no mood swings and reported no other problems (R. 282). In March 2007 the plaintiff reported his mood had been stable and his affect was pleasant (R. 279). His GAF was estimated at 60 (R. 280). In April 2007 the plaintiff reported an increase in depression in response to his prescription for Effexor being reduced, so the same was increased (R. 278). In May 2007 the plaintiff reported increased problems with stress and anxiety, and that "he hasn't liked being in crowds lately" (R. 276). Seroquel was added to his prescriptions (R. 276). Later that month, the plaintiff reported to Dr. Stanford that he was anxious among people and had tried to work but could not tolerate the anxieties (R. 274). He also complained that he could not tolerate the sedating effects of

Seroquel (R. 274). Dr. Stanford estimated his GAF at 52 (R. 275). Records reflect that the plaintiff received medication in June and September 2007 (R. 287, 288).

The next record from Riverbend is dated November 9, 2007 (R. 273). It reflects the plaintiff's report that he was out of all his medications, but only for the last two days (R. 273). His prescriptions were written and he was given an appointment with "Nurse Jan" and Dr. Stanford, since he had not been seen since May 25, 2007 (R. 273). At his December 3, 2007, appointment with Janette Hayes, LPN, the plaintiff related that he was having no increased problems as long as he took his medication, but also that he was not sleeping well (R. 271). He reported he was nervous and worried, but denied depression (R. 271). On December 21, 2007, Dr. Stanford recorded that the plaintiff was isolated, had online friends and rode his motorcycle, but could not stand being around more than two people at a time (R. 267). The plaintiff reported he was taking his medication and his life was better than it had been a year earlier (R. 267). He felt less lonely and less alienated (R. 267). He was dysphoric and bitter (R. 267). Dr. Stanford assigned a GAF of 50, recommended therapy and stated the plaintiff should return for an appointment with him in a month (R. 268). However, the next record from Dr. Stanford is his completion of a Medical Assessment Form (Mental) (R. 265).

Assumably based on the above, Dr. Stanford completed the forms, noting that he believed the plaintiff's mental impairment could be expected to be disabling (R. 263). Dr. Stanford found the plaintiff to have severe limitations dealing with the

6

public, relating to co-workers, and dealing with work stresses (R. 265). He found the plaintiff to have moderate limitations in interacting with supervisors and mild limitations in following work rules (R. 265). No bases for these opinions are stated and no opinion regarding whether the plaintiff's symptoms could be expected to last more than 12 months is given.

Rather than adopting the limitations set forth by Dr. Stanford, the ALJ opted to base his decision on the opinion of the State agency's medical consultant. The plaintiff asserts this was error requiring this court to reverse the decision of the ALJ. The weight to be given a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. *See* 20 C.F.R. § 404.1527(d)(3)-(4); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158, 1160 (11th Cir.2004) (holding that the ALJ did not err in relying on consulting physician's opinion where it was consistent with medical evidence and findings of the examining physician). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ will place on that opinion. *Kemp v. Astrue,* 308 Fed.Appx. 423, 427 (11th Cir.2009); citing 20 C.F.R. § 404.1527(d)(4). Furthermore,

> The ALJ must state with particularity the weight given to different medical opinions and the reasons therefore. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987). The ALJ should consider a physician's opinion in accordance with the factors set forth in the guidelines: (1) the examining relationship; (2) the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(d). The Commissioner may reject any medical opinion if the

> evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985). Where an ALJ discredits a claimant's subjective testimony, he must articulate explicit reasons, supported by substantial evidence, for doing so. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir.2002).

*Kemp,* 308 Fed.Appx. at, 427-428.

The ALJ stated that he considered the opinion of Dr. Stanford as plaintiff's treating psychiatrist, but there was not sufficient objective findings cited in his records in support of his opinion, which appeared to be based entirely on the plaintiff's subjective complaints (R. 21). The ALJ noted that the plaintiff had been treated conservatively, that the plaintiff had failed to follow through on the recommendation he go to vocational rehabilitation, and that the plaintiff had not tried to work (R. 21). Although the ALJ thereafter launched into an inappropriate diatribe of his own opinions, the court is left with the firm belief that the decision of the ALJ is based on the substantial evidence contained in the record.[1] See e.g., *Bloodsworth*, 703 F.2d at 1239.

Based upon the court's evaluation of the evidence submitted to and adduced at the hearing before the Administrative Law Judge and considered by him and the Appeals Council, the court is satisfied that the decision of the Administrative Law Judge is based upon substantial evidence and that the Administrative Law Judge applied the correct legal standard to each issue presented. Accordingly, the

---

[1] The court notes that one set of medical records, relied on by plaintiff in his brief to this court, belong to a Carlos Perez who has a different date of birth and a different social security number than the Carlos Perez before this court (R. 144-151).

8

decision of the Commissioner of the Social Security Administration will be affirmed by separate order.

Done, this 10th of July, 2009.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE